## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

IDS PROPERTY CASUALTY
INSURANCE COMPANY,

     Plaintiff/Counter-Defendant,          Case No. 13-11233

v.                                    Hon. Gerald E. Rosen

FRANO KASNECI,

     Defendant/Counter-Plaintiff.

_____/

## OPINION AND ORDER REGARDING
## CROSS-MOTIONS FOR SUMMARY JUDGMENT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on        December 5, 2016       

PRESENT:  Honorable Gerald E. Rosen
United States District Judge

## I. INTRODUCTION

After Defendant Frano Kasneci sustained injuries in a 2007 automobile

accident, he reached a settlement with his automobile insurer, Plaintiff IDS

Property Casualty Insurance Company, that called for Plaintiff to provide various

benefits to Defendant for a two-year period concluding in April of 2014.  Upon

conducting surveillance of Defendant in September of 2012, however, the Plaintiff

insurer determined that Defendant was no longer entitled to the benefits awarded

to him under the parties' settlement agreement.  Accordingly, Plaintiff evidently ceased to pay these benefits in March of 2013, and it also commenced the present action in this Court, seeking (i) a declaration that it has no further obligation to provide benefits to Defendant under the parties' settlement agreement, and (ii) recovery of all past payments made to Defendant under the settlement agreement. Defendant, in turn, has filed a counterclaim against the Plaintiff insurer, alleging that it has breached the parties' settlement agreement by improperly ceasing payment of the benefits granted to Defendant under the agreement.

Through the present cross-motions, Defendant seeks an award of summary judgment in his favor as to each of the claims asserted in Plaintiff's complaint, and Plaintiff requests that summary judgment be awarded in its favor on the counterclaims asserted by Defendant.  These motions have been fully briefed by the parties.[1]  Having reviewed the parties' briefs and accompanying exhibits, as well as the remainder of the record, the Court finds that the relevant allegations,

---

[1]Several months after the conclusion of this briefing, Defendant filed a motion seeking leave to identify and discuss an unpublished Sixth Circuit decision, *Villaflor v. State Farm Mutual Automobile Insurance Co.,* No. 07-1663, 343 F. App'x 33 (6th Cir. Aug. 19, 2009), that purportedly bears on the issues raised in the parties' cross-motions. Because this opinion was available at the time Defendant filed his briefs in support of his motion and in opposition to Plaintiff's motion, and because *Villaflor* addressed an issue not presented here (the availability of attorney fees) that arose in a post-trial procedural posture and thus was subject to a different standard of review (abuse of discretion), the Court sees no purpose in allowing Defendant to file a supplemental brief discussing this unpublished decision.

facts, and legal arguments are adequately presented in these written submissions, and that oral argument would not aid the decisional process. Accordingly, the Court will decide the parties' cross-motions "on the briefs." *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. This opinion sets forth the Court's rulings on these motions.

## II.  FACTUAL BACKGROUND

On March 20, 2007, Defendant Frano Kasneci sustained various injuries in an automobile accident. Following this accident, Defendant sought benefits from his automobile insurer, Plaintiff IDS Property Casualty Insurance Company. Although Plaintiff allegedly "commenced the payment of benefits to [Defendant] from the date of the accident" through the date the present suit was filed, (Complaint at ¶ 7), Defendant evidently was dissatisfied with these payments and brought a state court suit against Plaintiff in April of 2009.

In May of 2012, the parties entered into a settlement agreement calling for Plaintiff to pay certain benefits to Defendant for the period from April 20, 2012 to April 19, 2014. (*See* Complaint, Ex. 1, Settlement Agreement.) Specifically, this agreement provided that Plaintiff would pay Defendant (i) $1,568.00 per week for 128 hours of home attendant health care services, (ii) $400 per month for transportation services, and (iii) the cost of a health club membership in lieu of

3

physical therapy. (*Id.* at 1-2.)[2]  In addition, Plaintiff promised to pay the "reasonable medical expenses incurred for [Defendant's] care, treatment, rehabilitation and accommodation . . . arising as a result of" his auto accident, as well as the cost of "all medications prescribed by physicians[]" for Defendant's care and treatment arising from this accident. (*Id.* at 2-3.)  The parties agreed, however, that if there was "a substantial change in [Defendant's] medical circumstance," Plaintiff would be relieved of its obligation to pay benefits "for that period of time that said change [in] circumstance shall continue." (*Id.* at 3.)

Both before and during the two-year term of the settlement agreement, a private investigator retained by the Plaintiff insurer conducted surveillance of Defendant's activities. (*See* Defendant's Motion, Ex. 7, Adamczyk Dep. at 10-11, 20, 33-36.)  Although Defendant's health care providers opined that he could not drive due to his medical condition,[3] Defendant was observed driving a car in November of 2011 and September of 2012. (*See id.* at 15-19, 25-31; *see also* Plaintiff's Motion, Ex. 9, 9/30/2012 Surveillance Report at 2.)  Moreover,

─────────────

[2]Under the agreement, the payments for attendant care and transportation services were disbursed to Defendant's wife, Vera Kasneci, (*see id.* at 2), who evidently provided these services to her husband.

[3]The record includes a number of notes and records from Defendant's health care providers that shed additional light on Defendant's medical condition.  The specific details disclosed in these materials will be addressed below as pertinent to the Court's analysis of the issues raised in the parties' cross-motions.

4

Defendant suffered from occasional seizures and episodes of aggressive behavior and loss of control, concerns that presumably led to the provision in the settlement agreement calling for over 18 hours a day of attendant care.  Yet, Plaintiff's surveillance disclosed that Defendant engaged in various activities — *e.g.,* a convenience store transaction, (*see* 9/30/2012 Surveillance Report at 25), numerous interactions with a contractor at his home over the course of several hours, (*see* Plaintiff's Motion, Ex. 10, 1/28/2013 Surveillance Report at 19-37), and helping a man confined to a wheelchair gain entrance to an office building, (*see* Plaintiff's Motion, Ex. 11, 3/19/2013 Surveillance Report at 22-23) — without any attendant care provider on hand to intervene and assist Defendant if that proved necessary.

In light of this surveillance, the Plaintiff insurer ceased making payments to Defendant under the settlement agreement.  In addition, Plaintiff commenced the present action in this Court on March 20, 2013, seeking (i) a declaration that the parties' settlement agreement is no longer enforceable, whether due to a mistaken understanding of Defendant's condition at the time the parties entered into this agreement or a subsequent improvement in Defendant's condition, and (ii) reimbursement of the payments made by Plaintiff to Defendant under the agreement.  Defendant, in turn, filed a counterclaim against Plaintiff, seeking (i) a

5

declaration that Plaintiff is responsible for paying the entirety of the benefits called for under the settlement agreement, and (ii) an award of all benefits withheld by Plaintiff over the two-year term of this agreement.

## III.  ANALYSIS

### A.    The Standards Governing the Parties' Cross-Motions

Through the present cross-motions, both Plaintiff and Defendant seek an award of summary judgment in their favor as to each of the claims asserted against them by the opposing party.  Under the pertinent Federal Rule governing these motions, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  As the Supreme Court has explained, "the plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence "in a light most favorable to the party opposing the motion, giving that party the benefit of all reasonable inferences."  *Smith Wholesale Co. v. R.J.*

6

*Reynolds Tobacco Co.,* 477 F.3d 854, 861 (6th Cir. 2007).  Yet, the nonmoving party may not rely on bare allegations or denials, but instead must support a claim of disputed facts by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  Moreover, any supporting or opposing affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  Finally, "[a] mere scintilla of evidence is insufficient" to withstand a summary judgment motion; rather, "there must be evidence on which the jury could reasonably find for the non-moving party."  *Smith Wholesale,* 477 F.3d at 861 (internal quotation marks and citation omitted).

**B.    Issues of Fact Remain as to Whether the Plaintiff Insurer Has Established a Substantial Change in Circumstances That Would Relieve It of Any Further Payment Obligations Under the Parties' Settlement Agreement.**

In its three-count complaint, the Plaintiff insurer seeks (i) a declaratory judgment enforcing the provisions of the parties' settlement agreement and relieving Plaintiff of the obligation to make any further payments to Defendant

under this agreement, (ii) the reimbursement of payments already made to Defendant under an alleged mistake of fact, and (iii) the reimbursement of these payments under the alternative theory of unjust enrichment. In seeking an award of summary judgment in his favor as to the first of these claims, Defendant argues (i) that Plaintiff has failed to identify a basis for setting aside the settlement agreement in its entirety, and (ii) that there is no evidentiary support for Plaintiff's claim of a substantial change in circumstances that would relieve it of any further obligation to make the payments called for under the agreement. As discussed below, the Court accepts the first of these contentions, but finds that it must be left to the trier of fact to determine whether Plaintiff may invoke the "substantial change in circumstances" provision of the settlement agreement to avoid any further payments to Defendant.

As Defendant observes in his motion, it is not entirely clear from the complaint whether Plaintiff seeks to set aside the parties' settlement agreement in its entirety, or whether Plaintiff instead wishes to affirmatively enforce the terms of this agreement in order to relieve itself of any further obligations otherwise owed to Defendant under the agreement. On one hand, the plea for relief in count I of the complaint expressly incorporates a request that the Court "set aside the [parties'] 'Settlement Agreement.'" (Complaint, Count I, Prayer for Relief.) On

8

the other hand, Plaintiff states in its response to Defendant's motion that it is not

pursuing a claim that the settlement agreement "is void *ab initio,*" but rather

"seeks a determination concerning the applicability/enforceability of specific

provisions" of this agreement.  (Plaintiff's Response Br. at 12.)  In an abundance

of caution, the Court briefly addresses the question whether Plaintiff has identified

an evidentiary basis for setting aside the settlement agreement.

Under Michigan law,[4] a settlement agreement may be set aside only on

grounds of fraud, mutual mistake, or duress.  *See Streeter v. Michigan*

*Consolidated Gas Co.,* 340 Mich. 510, 65 N.W.2d 760, 764 (1954).  Defendant

asserts in its motion that Plaintiff has failed to produce any evidence of mutual

mistake or duress in the parties' execution of their settlement agreement, and

Plaintiff does not contend otherwise in its response to Defendant's motion.  As for

fraud, Plaintiff likewise does not attempt to marshal the evidentiary record in

support of a showing of fraud that would invalidate the settlement agreement.  *See*

*Custom Data Solutions, Inc. v. Preferred Capital, Inc.,* 274 Mich. App. 239, 733

N.W.2d 102, 105-06 (2006).

In lieu of identifying specific grounds, supported by evidence, for setting

---

[4]The parties agree that Michigan law governs the claims and counterclaims
asserted in this case, as well as the interpretation of the parties' settlement agreement.

aside the settlement agreement, Plaintiff suggests that it could plead and prove the requisite fraud if necessary.  (*See* Plaintiff's Response Br. at 16.)  Yet, it has not submitted a proposed amended complaint from which the Court could assess the sufficiency of its pleading of fraud, nor has it identified a specific basis in the record for a finding of fraud.  Rather, Plaintiff tersely asserts that the requisite "factual basis" for a showing of fraud may be found in the allegations of the complaint and in a September 2012 surveillance report of Defendant's activities. (*See id.* at 16-17.)  Such breezy generalities do not suffice to meet Plaintiff's burden to oppose summary judgment by "citing to particular parts of materials in the record" that demonstrate a genuine issue of material fact, Fed. R. Civ. P. 56(c)(1)(A), and the Court declines to undertake this inquiry on Plaintiff's behalf. *See Winget v. JP Morgan Chase Bank, N.A.,* 537 F.3d 565, 573 (6th Cir. 2008) ("Plaintiffs are not entitled to an advisory opinion from the Court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies." (internal quotation marks, alteration, and citations omitted)).

Nonetheless, Plaintiff insists that it need not identify a basis for setting aside the settlement agreement in its entirety, where the provisions of the agreement itself purportedly operate to relieve Plaintiff of any further obligation to pay the benefits promised to Defendant under this agreement.  In particular, Plaintiff

10

points to language in the agreement providing that this obligation "shall no longer be in effect" during any period of time in which there is "a substantial change in [Defendant's] medical circumstance[s]." (Settlement Agreement at 3.) Plaintiff argues that there are genuine issues of material fact as to the applicability of this provision, where surveillance of Defendant's activities during the period covered by the settlement agreement indicates that his condition is not as debilitating as reflected in the medical records and opinions of his physicians.

In Defendant's view, however, the record fails as a matter of law to establish the requisite change in his medical condition that would relieve Plaintiff of its obligation to pay benefits under the settlement agreement. First, while Plaintiff points to surveillance video of Defendant driving a car as evidencing improvement in the seizures and mood disorders that led Defendant's physicians to conclude that he should not operate a motor vehicle, (*see* Defendant's Motion, Ex. 4, Petrilli Dep. at 15, 30-34; Ex. 3, Cullis Dep. at 59-60, 62), Defendant cites the opinions of these same physicians that Defendant's occasional driving against his doctors' orders does not reflect an improved condition, but instead is attributable to poor judgment and impulse control arising from his underlying

condition, (*see* Petrilli Dep. at 59-60; Cullis Dep. at 62).[5]  Similarly, a consulting

psychologist, Dr. Manfred Greiffenstein, concluded upon examining Defendant in

2015 and reviewing his medical records that Defendant was malingering, (*see*

Defendant's Motion, Ex. 11, Greiffenstein 3/20/2015 Report at 8), but Defendant

points out that Dr. Greiffenstein reached much the same conclusion in a 2009

report that was available to Plaintiff well before the parties entered into their May

2012 settlement agreement, (*see* Defendant's Motion, Ex. 5, Greiffenstein

1/23/2009 Report at 11).  Under this record, Defendant argues that Plaintiff has

failed as a matter of law to produce evidence of a "substantial change in

[Defendant's] medical circumstance[s]" within the meaning of the relevant

provision of the parties' settlement agreement.

    The Court finds that issues of fact preclude a determination as a matter of

law as to the applicability of the "substantial change" provision of the parties'

settlement agreement.  First, while Defendant contends that his operation of a

motor vehicle in September of 2012 cannot be viewed as evidence of a substantial

change in his condition, in light of Plaintiff's awareness that he had driven a car

---

[5]In addition, Defendant notes that he was observed driving a car in November of
2011, several months before the parties entered into their settlement agreement.  Thus, he
suggests that additional episodes of driving cannot establish a change in his medical
condition during the period covered by the agreement.

on at least one occasion prior to the parties' execution of the settlement agreement, this overlooks the possibility that a trier of fact might view Defendant's pre- and post-agreement driving activities as qualitatively different. The surveillance of Defendant on November 29, 2011, for example, disclosed that he drove by himself only on a brief trip to a gas station, and that his wife accompanied him as he continued to drive for roughly two more hours while the couple ran a few errands. (*See* Adamczyk Dep. at 15-18.) During a ten-day period in late September of 2012, in contrast, Defendant was observed driving by himself on two separate occasions, (*see id.* at 24, 31; *see also* 9/30/2012 Surveillance Report at 2, 6, 27), and he drove more than seven additional hours with his wife as a passenger, (*see* 9/30/2012 Surveillance Report at 8-11, 15-22). The Court is not prepared to say that the post-agreement driving activities disclosed in the September 2012 surveillance of Defendant are insufficient as a matter of law to support a finding of a substantial change in Defendant's medical condition.

To be sure, two of Defendant's physicians have opined that the driving episodes captured in Plaintiff's surveillance are not indicative of improvement in Defendant's medical condition, but instead reflect his poor judgment, cognitive impairment, and impulsive behavior arising from his brain injury. (*See* Petrilli Dep. at 59-60; Cullis Dep. at 62.) Yet, while this is one explanation for

13

Defendant's driving, it is not the only permissible conclusion that a trier of fact could reach under the record. Rather, it is up to the trier of fact to determine how much to credit the opinions of Defendant's physicians, and to weigh these opinions against the contrary view of Dr. Greiffenstein, who has opined that Defendant is malingering and that his condition does not prevent him from driving. (*See* Defendant's Motion, Ex. 11, Greiffenstein 3/20/2015 Report at 8-9.)[6]

Next, while Defendant focuses in isolation on the episodes of driving captured in the post-agreement surveillance of his activities, Plaintiff correctly observes that this surveillance disclosed Defendant engaging in additional activities that are arguably inconsistent with his claimed need for the services provided in the settlement agreement. Most notably, Defendant was seen (i) engaging in a transaction at a convenience store, (*see* 9/30/2012 Surveillance Report at 25), (ii) repeatedly interacting with a contractor at his home over the

---

[6]As noted earlier, Defendant points out that Dr. Greiffenstein offered essentially the same opinion in a 2009 report issued before the parties entered into their settlement agreement. Yet, while this surely undercuts any reliance that Plaintiff might seek to place in Dr. Greiffenstein's opinion to establish a post-agreement change in Defendant's medical condition, this would not preclude the trier of fact from crediting this opinion for a different purpose — namely, as countering the opinions of Defendant's physicians that the activities captured in the surveillance of Defendant are consistent with their views that he continues to suffer from a serious brain injury and associated impairments.

14

course of several hours, (*see* 1/28/2013 Surveillance Report at 19-37), (iii)

shoveling snow and operating a snow blower, (*see* 3/19/2013 Surveillance Report

at 5), (iv) assisting an individual in a wheelchair in gaining entry to an office

building, (*see id.* at 22-23), and (v) loading boxes of produce into the trunk of his

car, (*see id.* at 27).  Because Defendant apparently was unattended as he performed

some of these tasks, and because the physical and mental impairments identified

by Defendant and his physicians — *e.g.,* seizures with occasional loss of

consciousness, (*see* Cullis Dep. at 41-43), mood and anger issues, (*see* Petrilli

Dep. at 15, 25), and significant neck, back, and knee pain, (*see* Plaintiff's

Response, Ex. 14, 2/3/2012 Treatment Notes) — seemingly would preclude many

of these activities, a trier of fact could permissibly view this record as evidencing

substantial improvement in a condition that previously required over 18 hours per

day of attendant care, $400 per month in transportation services, and ongoing

expenses for medical treatment and medications.[7]  Accordingly, issues of fact

---

[7]As noted in its response to Defendant's motion, Plaintiff need not (and does not) rely exclusively on the "substantial change in circumstances" provision of the settlement agreement as justifying its suspension of payment under the agreement.  Rather, Plaintiff also cites language in the agreement providing that it must pay Defendant's medical expenses only insofar as they are "reasonably necessary and arising as a result of" Defendant's automobile accident in March of 2007.  (Settlement Agreement at 2.)  To the extent, then, that Defendant's condition improved to the point that he no longer required treatment for injuries sustained in his accident, Plaintiff could invoke this provision of the settlement agreement as authorizing it to cease payment of expenses for medical treatments that were no longer "reasonably necessary."  Just as there are issues of fact as

remain as to Plaintiff's entitlement to the declaratory relief sought in count I of its

complaint.

**C.    Plaintiff Has Identified Issues of Fact as to Its Entitlement to Seek Reimbursement of Payments Made to Defendant Under the Parties' Settlement Agreement.**

In the second and third counts of its complaint, Plaintiff seeks

reimbursement of some or all of the payments it made to Defendant under the

parties' settlement agreement, alleging that it may recover these payments (i) as

made under a mistake of fact, or (ii) under a theory of unjust enrichment.  While

Defendant purports to seek an award of summary judgment in his favor as to all

claims asserted in Plaintiff's complaint, the briefs in support of his motion are

wholly silent as to the theories of recovery advanced by Plaintiff in counts II and

III of its complaint.[8]  Consequently, the Court addresses these two theories only

―――――――――――――――

to whether Plaintiff may properly invoke the "substantial change in circumstances" provision of the settlement agreement, the surveillance of Defendant likewise raises issues of fact as to whether Plaintiff properly refused to pay certain of Defendant's medical expenses on the ground that these expenses were not "reasonably necessary" to address conditions he suffered as a result of his March 2007 auto accident.

[8]Oddly, Defendant and his counsel address these theories of recovery in Defendant's response to Plaintiff's motion, but not in the briefing in support of Defendant's own motion.  Since Plaintiff's summary judgment motion challenges only Defendant's counterclaims, and does not seek an award of summary judgment as to Plaintiff's own claims, the Court is at a loss as to why Defendant and his counsel would deem it appropriate to question the viability of Plaintiff's claims in response to a motion that does not advance any arguments in support of these claims.

16

briefly, and readily concludes that Plaintiff has identified issues of fact sufficient to withstand an award of summary judgment in Defendant's favor as to these claims.

As Plaintiff observes, the Michigan courts have long recognized that a contracting party may recover a payment made to the other contracting party "if made under a mistake of a material fact." *Montgomery Ward & Co. v. Williams,* 330 Mich. 275, 47 N.W. 607, 611-12 (1951) (internal quotation marks and citation omitted); *see also Titan Insurance Co. v. Hyten,* 491 Mich. 547, 817 N.W.2d 562, 568 n.4 (2012); *Wilson v. Newman,* 463 Mich. 435, 617 N.W.2d 318, 321 (2000). Although reimbursement is not available where payment is made with "full knowledge of all the circumstances upon which it is demanded," a payment made under a mistaken understanding of the facts may be recovered "even if the mistake be due to a lack of investigation." *Montgomery Ward,* 47 N.W. at 612 (internal quotation marks and citations omitted). Thus, as this Court recently explained, "[u]nder Michigan law, when one is over-billed and then mistakenly submits full payment in response to that bill, one has made a mistake of fact" and may recover the payment, even if the mistake could have been avoided through more careful examination. *Process Control & Instrumentation, LLC v. Emerson Process Management Power & Water Solutions, Inc.,* No. 12-15670, 2014 WL 2931391, at

17

*8 (E.D. Mich. June 30, 2014).

Under the record here, it cannot be said as a matter of law that Plaintiff is foreclosed from pursuing this "mistake of fact" theory of recovery to seek reimbursement of at least some of the payments it made to Defendant under the parties' settlement agreement. Plaintiff evidently made such payments from the beginning of the contract term in April of 2012 until some point in 2013, and it points to the surveillance of Defendant in September of 2012 and early 2013 as demonstrating that Defendant was not in need of at least some of the attendant care, transportation services, and medical treatments that Plaintiff paid for under the settlement agreement. As discussed earlier, while Defendant and his physicians insist that these services were still necessary in light of the injuries sustained by Defendant in his March 2007 automobile accident, and that the surveillance footage does not establish otherwise, it must be left to the trier of fact to resolve the questions of fact underlying these contentions.

Defendant challenges this conclusion on two grounds,[9] but neither is

---

[9]As noted earlier, neither of these two arguments was raised in Defendant's initial and reply briefs in support of his motion for summary judgment. Rather, Defendant addressed Plaintiff's "mistake of fact" theory of recovery only in his response to Plaintiff's summary judgment motion — a motion which, as observed, does not even mention the "mistake of fact" claim asserted in count II of Plaintiff's complaint, much less seek any sort of relief as to this claim. Under these circumstances, the Court need not address Defendant's challenges to this theory of recovery, but nonetheless does so for the

18

persuasive.  First, Defendant seems to suggest that the "mistake of fact" theory of recovery is unavailable as a matter of law to recover payments made under a settlement agreement.  Yet, the courts have applied the "mistake of fact" theory to payments made under a variety of circumstances, *see, e.g., Wilson,* 617 N.W.2d at 319 (payment of a judgment by a garnishee pursuant to a writ of garnishment); *Montgomery Ward,* 47 N.W. at 608 (payment under a group health and accident insurance plan offered by the plaintiff retailer to its employees); *Process Control,* 2014 WL 2931391, at *1 (payments to a contractor under a service agreement), and Defendant has failed to identify any authority for the proposition that a payment made under a settlement agreement is somehow exempt from this long-recognized principle of Michigan law.  Indeed, the Michigan Court of Appeals has applied this theory of recovery in a case where, as here, the parties settled an insurance claim and the insurer later sought to recover its settlement payment as allegedly made under a mistake of fact.  *See Sentry Insurance v. ClaimsCo International, Inc.,* 239 Mich. App. 443, 608 N.W.2d 519, 521, 524-25 (2000).

Defendant next argues that Plaintiff cannot establish the requisite mistake of fact in this case, where the record purportedly shows that Plaintiff acted with full knowledge of all of the relevant facts and circumstances when it entered into the

─────────────────

sake of completeness.

19

settlement agreement with Defendant.  Even assuming this is so, however, the

Court has already determined that issues of fact remain as to whether there was a

substantial change in Defendant's medical condition during the two-year term of

the settlement agreement.  Likewise, there are issues of fact as to whether the

surveillance of Defendant's activities demonstrates that he was not in need of at

least some portion of the services paid for by Plaintiff under the settlement

agreement, and the "mistake in fact" theory of recovery allows Plaintiff to seek

reimbursement of such payments allegedly made under a mistaken understanding

that Defendant required these services.  Accordingly, a trier of fact must resolve

this claim for reimbursement.

　　　Turning next to Plaintiff's claim of unjust enrichment, Defendant challenges

this claim on the ground that it is "only appropriate in the absence of an express

contract."  *APJ Associates, Inc. v. North American Philips Corp.,* 317 F.3d 610,

617 (6th Cir. 2003).[10]  Because the parties entered into a settlement agreement that

establishes the terms and conditions of Plaintiff's payments, Defendant suggests

that the equitable theory of unjust enrichment is unavailable here.  Yet, two claims

may be pled in the alternative, even if they are mutually inconsistent "or even

---

[10]Again, Defendant raised this argument only in his response to Plaintiff's
summary judgment motion, and the Court addresses it only for the sake of completeness.

20

contradictory." *Detroit Tigers, Inc. v. Ignite Sports Media, LLC,* 203 F. Supp.2d 789, 793 (E.D. Mich. 2002). Admittedly, given the terms of the settlement agreement that (i) relieve Plaintiff of its obligation of payment in the event of a substantial change in Defendant's medical condition, and (ii) require Plaintiff to pay only those medical expenses reasonably incurred by Defendant as a result of the injuries sustained in his auto accident, it is difficult to imagine a set of circumstances under which Plaintiff has no contractual remedy and must therefore rely on a theory of unjust enrichment.[11] Nonetheless, the Court finds no basis for concluding as a matter of law that Plaintiff is precluded from pursuing its claim of unjust enrichment.

**D.   Issues of Fact Remain as to Defendant's Counterclaims Seeking Payment of Benefits To Which He Allegedly Is Entitled Under the Parties' Settlement Agreement.**

Defendant has asserted two counterclaims against the Plaintiff insurer in this case, alleging that Plaintiff has breached the parties' settlement agreement by ceasing to make the payments called for under this agreement, and seeking a declaration by the Court that this agreement is binding and enforceable. Through

---

[11]Moreover, the Michigan courts have recognized that "[t]he mistake in fact rule . . . is based on the principle of restitution, as well as the goal of avoiding unjust enrichment to the payee." *Sentry Insurance,* 608 N.W.2d at 524. Accordingly, there arguably is at least some overlap between the "mistake in fact" and unjust enrichment claims asserted in counts II and III of Plaintiff's complaint.

21

its present motion, Plaintiff seeks an award of summary judgment in its favor as to each of these two counterclaims, arguing that Defendant is barred under Michigan law from recovering any benefits in light of the material misrepresentations he allegedly made to Plaintiff in connection with his claim for these benefits.

In support of its motion, Plaintiff relies almost exclusively on the decision of the Michigan Court of Appeals in *Bahri v. IDS Property Casualty Insurance Co.,* 308 Mich. App. 420, 864 N.W.2d 609 (2014). In that case, the plaintiff was injured in an automobile accident, and she sought personal protection insurance ("PIP") benefits under a no-fault automobile insurance policy issued by the defendant insurer. This no-fault policy included a fraud exclusion providing that coverage was unavailable "for any insured who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy." *Bahri,* 864 N.W.2d at 611-12 (internal quotation marks excluded).

The defendant insurer argued that the fraud exclusion in the plaintiff's no-fault policy barred her claim for PIP benefits, and the court agreed. *See Bahri,* 864 N.W.2d at 612-13. As grounds for this ruling, the court first observed that the plaintiff's claim for benefits encompassed replacement services provided prior to the date of her accident, so that the document submitted in support of this portion

22

of her claim plainly was false "on its face."  864 N.W.2d at 612.  In addition, the

defendant insurer produced surveillance videos that captured the plaintiff

performing activities that were inconsistent with both her claimed limitations and

her assertions that she required replacement services on the dates in question.  864

N.W.2d at 612-13.  Because this evidence "directly and specifically

contradict[ed]" the representations made by the plaintiff in support of her claims

for replacement services, the Court of Appeals concluded that "[r]easonable minds

could not differ in light of this clear evidence that plaintiff made fraudulent

representations for purposes of recovering PIP benefits."  864 N.W.2d at 613.

Plaintiff contends that the same result is warranted here under purportedly

similar facts.  The underlying no-fault policy issued by Plaintiff to Defendant, like

the policy at issue in *Bahri,* includes a provision withholding coverage from "any

insured who has made fraudulent statements or engaged in fraudulent conduct in

connection with any accident or loss for which coverage is sought under this

policy."  (Plaintiff's Motion, Ex. 12, No-Fault Policy at 9.)  Moreover, Plaintiff

points to surveillance videos disclosing that for "at least a portion" of the time

period covered by the parties' settlement agreement, Defendant evidently was not

using the attendant care and transportation services that Plaintiff was paying for

under the agreement.  (Plaintiff's Motion, Br. in Support at 13.)  It follows, in

23

Plaintiff's view, that Defendant made materially false representations that these services were necessary and were actually provided, and that these purported misrepresentations bar the recovery sought in Defendant's counterclaims.

The Court agrees with Defendant that *Bahri* is readily distinguishable and not controlling here.  Most importantly, while the plaintiff in *Bahri* sought recovery under a no-fault policy with a fraud exclusion, Defendant here seeks to enforce a settlement agreement that lacks any such exclusion.  To be sure, Plaintiff observes that the "genesis" of the parties' settlement agreement is the no-fault auto insurance policy issued by Plaintiff to Defendant, and that, absent this policy, Defendant would not have any entitlement to the benefits conferred in the settlement agreement.  (Plaintiff's Reply Br. at 3.)  Yet, once the parties elected to resolve their dispute over insurance coverage by entering into a settlement agreement, any terms in the underlying no-fault policy were superseded by the provisions of the settlement agreement, and Plaintiff has not identified any authority suggesting that the fraud exclusion (or any other terms) set forth in the no-fault policy somehow carried over and were incorporated into the separate settlement agreement executed by the parties.[12]  Accordingly, because the decision

---

[12]To illustrate the point, the underlying no-fault policy presumably established claim processing procedures for seeking recovery of PIP and other benefits, but there is no reason to believe that Defendant had to comply with these procedures in order to

in *Bahri* rests upon the interpretation of a fraud exclusion in a no-fault insurance policy, it has no application to Defendant's counterclaims seeking a recovery under a settlement agreement that lacks any similar provision.

This is not to say that Plaintiff is wholly without recourse in the event that Defendant has attempted to secure payment under the settlement agreement through misrepresentations of his medical condition. As discussed earlier, Plaintiff is authorized under Michigan law to recover a payment made "under a mistake of a material fact," *Montgomery Ward,* 47 N.W. at 611 (internal quotation marks and citation omitted), and this same relief surely would be available if Plaintiff's mistaken understanding of the facts were derived from Defendant's misrepresentations that, for example, certain transportation or attendant care services were provided or certain medical treatments were needed.[13] Similarly, the "substantial change in circumstances" provision of the settlement agreement

---

secure the payments called for under the settlement agreement. To the contrary, the agreement itself mandates flat monthly payments to Defendant for attendant care and transportation services, without any evident need for Defendant to submit documentation in support of these payments. (*See* Settlement Agreement at 1-2.)

[13]More broadly, and as also observed earlier, Plaintiff would be entitled to rescind the settlement agreement in its entirety upon showing that it was procured through fraud. *See Titan Insurance,* 817 N.W.2d at 569. As explained above, however, Plaintiff has not pursued such an argument in its summary judgment briefing, nor has it attempted to marshal evidence in support of a showing of fraud that would warrant setting aside the settlement agreement in its entirety.

would permit Plaintiff to withhold further benefit payments upon discovering that Defendant's medical condition was no longer what it was represented to be at the time the parties entered into the agreement.

As explained in the context of Defendant's summary judgment motion, however, issues of fact remain as to the extent to which a mistake of material fact or substantial change in Defendant's medical condition would relieve Plaintiff of the obligation to make the payments called for under the settlement agreement. Indeed, Plaintiff itself acknowledges that the record establishes only that " a portion" of the attendant care and transportation services it paid for were not actually provided to Defendant. (Plaintiff's Motion, Br. in Support at 13.) Just as the trier of fact must determine whether, and to what extent, the Plaintiff insurer overpaid benefits to which Defendant was entitled under the settlement agreement, the trier of fact likewise must resolve Defendant's counterclaim that Plaintiff unlawfully withheld at least some benefit payments called for under the agreement. The claims and counterclaims in this case are, broadly speaking, two sides of the same coin, and the outcome of these claims and counterclaims rests largely on the resolution of a common set of factual questions that the Court cannot decide through the mechanism of summary judgment.

## IV.  **CONCLUSION**

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's July 8, 2015 amended motion for summary judgment (docket #76) is DENIED, except to the extent that Plaintiff seeks in count I of its complaint to set aside the parties' settlement agreement in its entirety.  Next, IT IS FURTHER ORDERED that Plaintiff's September 4, 2015 motion for summary judgment (docket #82) is DENIED.  Finally, IT IS FURTHER ORDERED that Defendant's April 8, 2016 motion for leave to identify supplemental authority (docket #90) is DENIED.


s/Gerald E. Rosen
United States District Judge

Dated:  December 5, 2016

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 5, 2016, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, (313) 234-5135

27